Terry D. GOLDSMITH and Kimberly
Goldsmith, Appellants,

v.

ALLIED BUILDING COMPONENTS,
INC., Appellee.

No. 91–SC–286–DG.

Supreme Court of Kentucky.

June 25, 1992.

Kenneth H. Baker, James S. Scroghan, Louisville, for appellants.

Robert E. Stopher, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellee.

LAMBERT, Justice.

This Court granted discretionary review of an opinion of the Court of Appeals which affirmed the trial court's summary judgment. CR 56. Despite its acknowledgement of an issue of fact, the court below applied the clearly erroneous standard of CR 52.01 and held that the personal injury claim of appellant, Terry D. Goldsmith, and the loss of consortium claim of his wife were barred by the exclusive remedy provision of the Workers Compensation Act, KRS 342.690.

This case is confusing due to the similarity in the names of two corporations and a third intended corporate entity which never came into corporate existence. David Carney, as owner and general contractor of the Mallard Crossing project in Jefferson County, entered into a subcontract for labor with an entity known as Allied Building Company, Inc. ("Company"). By the terms of this agreement, Company was to furnish the rough carpentry labor required for the project and perform other tasks not relevant here. Thereafter, the owners of Company attempted to have it incorporated, but the Secretary of State of Kentucky rejected the attempted incorporation and shortly thereafter, they successfully incorporated as Allied Building, Inc. ("Building"). About the same time, Carney also entered into a contract with Allied Building Components, Inc. ("Components") which appears to have been exclusively for the purchase of building materials. Thereafter, Components entered into two subcontracts with Automated Building Systems, Inc. ("Automated") for rough carpentry field labor. Automated then subcontracted with C & H Construction Company, the employer of Goldsmith. Thus, from the contracts it appears that Building was the corporate successor to the abortive attempt to incorporate Company and was the proper entity to have furnished the rough carpentry labor to the owner, but Components, without any contractual right, undertook performance of the contract, and, in fact, furnished the labor through its subcontracts with Automated.

As if the foregoing was not sufficiently confusing, the parties contend that various drafting errors were made in the documents. Appellee contends that the original contract between Carney and Company was intended to be between Carney and Components. Likewise, Goldsmiths contend that the subcontract for rough carpentry labor between Components and Automated was intended to be between Building and Automated. In other words, both parties contend that but for drafting errors which appear in the contract documents, the facts would be as they wish they were.

While working on the project and in the employ of C & H Construction Company, Goldsmith was severely injured when a stack of plywood fell on him fracturing his right leg in five places. His injury was allegedly caused by the negligence of a fork lift operator who was employed by Components. Goldsmith made a claim for Workers' Compensation benefits and this resulted in a settlement based on a permanent partial disability of 99.99%. The Goldsmiths also brought the instant civil action against Components which defended, *inter alia*, on the grounds set forth in KRS 342.690 and KRS 342.610(2) asserting the so-called "up the ladder" defense. *See United Engineers and Constructors, Inc. v. Branham*, Ky., 550 S.W.2d 540 (1977); *Bright v. Reynolds Metals Co.*, Ky., 490 S.W.2d 474 (1973). For the purpose of this discussion, and without consideration of whether Components should be deprived of this defense on grounds that the work being performed was not "regular and recurrent" (see *Fireman's Fund Insurance Company v. Sherman and Fletcher*, Ky., 705 S.W.2d 459 (1986)), we will assume that Components should prevail if it can establish its status as an "up the ladder" employer of Goldsmith.

In seeking reversal, the Goldsmiths, in effect, ask us to adjudge the inapplicability of the "up the ladder" defense and reverse the decisions of the courts below. For this contention, they rely upon the doctrine of judicial admissions and assert that certain admissions contained in deposition testimony and in pleadings in an entirely separate civil action brought by Building and Components against Carney are sufficient to remove the matter from any dispute. Predictably, Components responds that the statements made in the other case and relied upon by the Goldsmiths here were erroneous as illustrated by the plethora of errors and mistakes which appear throughout this record. They also contend that to be binding as a judicial admission, the admission must be in the same case or between the same parties in a subsequent case.

In a civil action brought several months after Goldsmith was injured, Building and Components joined in a lawsuit against David Carney claiming nonpayment of debt arising out of the Mallard Point project. Among other things, Building and Components alleged their separate existence and that Components held a contract with Carney denominated "material purchase order" and that Building held a subcontract agreement with Carney for rough framing labor. Building also alleged that it had entered into contracts with framing companies including Automated Building Systems, Inc. By deposition, Steven Brooks, who served as vice president of both Building and Components, testified that he and Steve Willis, president of Components, intended to have two separate organizations, "one to furnish the materials and one to supply the labor." He testified that he and Willis intended to form a distinct corporation to perform the labor. From the averments of the pleadings and the testimony of Brooks, Building and Components appear to be separate corporations and Goldsmith appears to be on the employment ladder with Building and not with Components.

The leading Kentucky decision on the law of judicial admissions is *Suther-* *land v. Davis*, 286 Ky. 743, 151 S.W.2d 1021 (1941), in which the Court distinguished between "quasi" admissions and judicial admissions. It pointed out that the former may be disproved by introduction of other evidence, while the latter conclusively establishes the fact in issue. A judicial admission was defined as "a formal act done in the course of judicial proceedings which waives or dispenses with the necessity of producing evidence by the opponent and bars the party himself from disputing it." Manifestly, the determination by a court that a party may not contradict an admission is strong medicine and should be sparingly administered. In *Bell v. Harmon*, Ky., 284 S.W.2d 812 (1955), we said that the judicial admission rule "should be applied with caution because of the variable nature of testimony and because of the ever present possibility of honest mistake." *Sutherland v. Davis, supra*, established the test for determining whether an admission should be treated as a judicial admission as follows: whether "the circumstances and conditions give rise to the probability of error in the party's own testimony?"

Our customary reticence to apply the doctrine of judicial admissions is heightened in this case due to the lack of identity of parties. Ordinarily, a judicial admission is argued to have resulted from some statement or act of a party in the pending litigation or by such a statement or act in other litigation between the same parties. *McGuire v. Citizens Fidelity Bank & Trust Co.*, Ky., 805 S.W.2d 119 (1991). Here, the source of the claimed judicial admission is a separate lawsuit involving some, but not all, of the parties to this litigation. While a party's statement in one case was held to be conclusive against him in another case in *Center v. Stamper*, Ky., 318 S.W.2d 853 (1958), the parties and the underlying controversy were the same. Unless the circumstances and conditions virtually eliminate the possibility of error, "a judicial admission in one action is not conclusive in another action." *Id.* at 855–56.

Components has asserted that its admissions in the Carney litigation and the ad-

missions in the testimony of Mr. Brooks were the result of mistake. As this case is rampant with alleged and demonstrable mistakes, inspiring little confidence in the accuracy of the parties' statements of fact, and as the case was terminated by summary judgment, we decline to hold the doctrine of judicial admissions applicable to the pleadings and statements as urged by the Goldsmiths. It should be clearly understood, however, that such pleadings and statements, along with other relevant evidence, should be admitted at trial and weighed by the trier of fact in resolving the disputed issue.

■ The Goldsmiths next seek reversal on grounds that the Court of Appeals applied an improper standard of review to the trial court's summary judgment. Due to the confusion in the case, we are not unsympathetic with the plight of the Court of Appeals when it undertook review. Nevertheless, we are constrained to point out that the Court of Appeals applied the clearly erroneous standard which is applicable to cases tried upon the facts without a jury or with an advisory jury (CR 52.01) to a case resolved by summary judgment which requires a determination that there is no genuine issue as to any material fact (CR 56.03). Under no circumstances is a summary judgment entitled to the deference or dignity of a case tried by the trial court. Simply stated, the Court of Appeals erred on this point.

■ Despite this, we must review the issue to determine whether the Court of Appeals should be affirmed even though it applied the wrong standard. This Court recently rendered the case of *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991), in which we extensively reviewed summary judgment practice in Kentucky. We reiterated the standard set forth in *Paintsville Hospital v. Rose*, Ky., 683 S.W.2d 255 (1985), that summary judgment is improper unless it appears "impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." Measured against this standard, we have no reluctance in holding that summary judgment was improper. While Components argues that the employment ladder went from Carney to Components to Automated to C & H Construction, and finally to Terry Goldsmith, as earlier stated, this contention is at odds with many of the documents and the admissions by Components and with other evidence. As such, there is a material issue of fact and reversal is required.

■ Prior to concluding, we observe that if it should be determined that Components is up the ladder from Goldsmith, KRS 342.-610 and our decision in *Fireman's Fund, supra*, impose an additional requirement for Components to prevail. To have benefit of the immunity provision of the Act, Components must also demonstrate to the satisfaction of the trier of fact that providing rough carpentry labor was a regular or recurrent part of its business.

For the reasons stated herein, this cause is reversed and remanded to the trial court for further proceedings consistent herewith.

STEPHENS, C.J., and COMBS, LEIBSON and SPAIN, JJ., concur.

LEIBSON, J., files a separate concurring opinion.

WILLIAM J. PARKER, Special Justice, dissents by separate opinion in which WINTERSHEIMER, J., joins.

LEIBSON, Justice, concurring.

I concur in the Majority Opinion with one exception: it does not go far enough in assessing the probative impact of the admissions by pleadings made by the appellee, Allied Building Components, Inc., in its prior law suit against David Carney, the owner and general contractor of the Mallard Crossing project. The Majority Opinion has treated the appellee's pleadings in that lawsuit as an evidentiary admission, which it surely is, but has stopped short of labeling it a judicial admission which would conclude the issue for purposes of the present lawsuit. I disagree.

I share the Majority's "reticence to apply the doctrine of judicial admissions," and

agree that "the judicial admission rule 'should be applied with caution because of the variable nature of testimony and because of the ever present possibility of honest mistake.'" But, surely this is the situation, if any there be, where the concept of binding judicial admissions should apply.

In this case, in the prior lawsuit the appellee, Allied Building Components, Inc., alleges it was a corporation with a contract to provide "Material ... for use in the construction" to Carney for the project in question, separate and distinct from the corporation with whom Carney contracted to provide "labor." Appellee sued Carney for breach of this contract. In the same Complaint, another corporation, Allied Building, Inc., also alleging it was a separate corporation, asserted a contract to provide labor for this same project, suing Carney for breach of this labor contract. In the Answer and Counterclaim filed by Carney, Carney denied the separateness of these corporations, and in Count I of his Counterclaim alleged these corporations "have acted as one single corporate entity in the facts, events, agreements, and contracts which are set forth in this counterclaim." In reply to the counterclaim, the appellee and this separate corporation specifically "deny" this allegation.

These are *formal* pleadings admittedly pertaining to the same construction work which is the subject matter of the present litigation. While I have great reluctance to apply the concept of binding judicial admissions to facts stated in testimony given during the course of a trial or deposition because these words are not formal admissions and because testimony is rarely entirely certain, I have *no* difficulty in applying the doctrine of judicial admissions to a statement made formally in pleadings to state or deny a cause of action, whether in the same lawsuit or a separate lawsuit, related to the same work in progress.

A judicial admission is defined in *Sutherland v. Davis*, 286 Ky. 743, 151 S.W.2d 1021, 1024 (1941), as "a formal act done in the course of judicial proceedings which waives or dispenses with the necessity of producing evidence by the opponent and bars the party himself from disputing it." The sole reason for having such a doctrine, binding and conclusive, is because the law should not permit a party that has made solemn representations to a court of law to suit its interests to change positions with respect to the same subject matter when it suits other interests. This principle has been routinely applied to changing one's position in the same suit. It has been applied in two separate suits between the same parties in *Center v. Stamper*, Ky., 318 S.W.2d 853 (1958). And the same policy reasons which justify having a rule treating formal admissions in pleadings as conclusive and binding on a party in the same lawsuit, or in the second of two separate lawsuits between the same parties based on the same general subject matter, apply to binding a party to admissions the party has made in one lawsuit when that party is involved in a subsequent lawsuit with a different party but involving the same work.

In *Bartman v. Derby Construction Company*, Ky., 395 S.W.2d 360, 361 (1965), our Court held that testimony given by the plaintiff as to when she "sustained damage from appellee's blasting" in one action was not conclusive in another action. But the issue in *Bartman* was whether testimony given by the plaintiff as a *witness* in the prior action should constitute a binding judicial admission, not (as here) whether a formal statement as to the operative facts made in pleadings by a *party* to sustain a claim in a prior lawsuit should preclude taking the opposite position with regard to the same essential facts in the pleadings in the next case. The difference is critical.

In *Bartman*, there was a substantial question as to whether there really was any "conflict between appellant's prior testimony and her affidavits in the instant action." Without attempting to address this problem the Court stated:

"Since the testimony relied upon by appellee to sustain its motion for summary judgment was not given in an action between these same parties *nor in an action wherein appellant was even a party* we conclude that it does not constitute a judicial admission...." *Id.* 395 S.W.2d at 361. [Emphasis added.]

Here the appellee *was a party* when the admission was made. Given the reasons of judicial policy underlying the concept of judicial admissions, the doctrine should apply in this case.

WILLIAM J. PARKER, Special Justice, dissenting.

I respectfully dissent.

For some time, the legal profession and the judicial system have been burdened by twin devils—costs and delay. To retry this cause of action at this point in time from the beginning would only compound that curse. The outcome both at the trial level and in the Court of Appeals was proper; the Court of Appeals simply stated the incorrect standard to be applied to reach its result.

There certainly was loose communication by both appellant and appellee as to the name "Allied," but considering the record as a whole, the "up the ladder" defense was appropriately applied. The claim of Mrs. Terry D. Goldsmith should be barred by KRS 342.090. There were no valid judicial admissions.

I would affirm.

WINTERSHEIMER, J., joins this dissent.