Jeffrey K. CLAIR; and Susan C. Clair, Appellants

v.

Paul E. HILLENMEYER; and Mary W. Hillenmeyer, Appellees.

No. 2006–CA–000922–MR.

Court of Appeals of Kentucky.

Aug. 17, 2007.

Charles H. Schaffner, Covington, KY, for appellants.

Thomas L. Rouse, Ft. Wright, KY, for appellees.

Before LAMBERT, MOORE, and NICKELL, Judges.

## OPINION

NICKELL, Judge.

Paul E. Hillenmeyer and his wife, Mary W. Hillenmeyer (hereinafter collectively referred to as "Hillenmeyer"), filed suit against Jeffrey K. Clair and his wife, Susan C. Clair (hereinafter collectively referred to as "Clair"), in the Grant Circuit Court for damages incurred as a result of Clair's repudiation of a real estate sale and purchase agreement. The Circuit Court granted summary judgment in favor of Hillenmeyer and denied summary judgment in favor of Clair by order entered January 9, 2006. The Circuit Court fixed Hillenmeyer's damages by subsequent order entered April 5, 2006. It is from both of these orders that Clair appeals. After a careful review of the record, we reverse and remand for further proceedings.

In April 2004 Hillenmeyer listed for sale a certain parcel of real estate located in Dry Ridge, Grant County, Kentucky. Clair made an offer to purchase the property for $219,000.00 on June 9, 2004, which offer was promptly accepted by Hillenmeyer. A standard contract to purchase [1] was prepared and executed by all parties. Several stipulations were set forth therein which were required to be satisfied prior to the closing of the transaction. Of singular importance to this appeal was a restriction added by Clair that the septic system servicing the property be repaired.[2] According to the deposition testimony offered to the trial court, the septic system was malfunctioning in some way, allowing waste water [3] to percolate to the surface of the yard. This condition was readily observable upon inspection of the property and was not concealed from view in any way. Thus, after viewing the property and determining to make an offer thereon, Clair added the *caveat* regarding repair of the system.

Following execution of the contract to purchase, a meeting occurred in the yard of the subject property between Clair, Hillenmeyer, their respective Realtors, and Jeff Franxman, a local plumber familiar with septic systems. The purpose of this meeting was to obtain suggestions for modifications and repairs to the faulty septic system. Franxman offered several alternatives, but the discussions focused

---

1. The contract to purchase was a preprinted form prepared and provided by the Northern Kentucky Association of REALTORS to members of that association. Both Hillenmeyer and Clair were represented throughout the transaction by separate agents who were members of the association.

2. The specific language of the handwritten restriction added by Clair reads: "Seller will repair septic system to meet code & allow Purchaser to attend while repairs are performed."

3. The terms "gray water" and "black water" were used almost interchangeably in the parties' briefs, but neither was defined by the parties. "Gray water" generally refers to that portion of waste water from a home originating from any source other than toilets. "Black water" typically refers to waste water containing fecal matter and/or urine. For purposes of this appeal, this distinction is unimportant. Therefore, we will use the generic term of "waste water" to refer to both.

upon a single alternative which involved installation of a secondary leach field which would be accessed via a manually operated valve system. This secondary field would be used when the original leach field became overburdened or "broke out" above ground. The only feasible location for this addition was near the home where Clair intended to construct an addition.[4] The meeting adjourned, and the parties left to discuss the situation. There is no indication further discussions occurred between the parties regarding this proposal or any other alternatives. Furthermore, no repairs or alterations were commenced on the system.

Shortly after the meeting, on August 6, 2004, Clair's real estate agent, Ellen Heile, notified Hillenmeyer of Clair's intention to withdraw from the purchase contract. Therefore, Heile stated Clair was dissatisfied with the proposed modification and further felt that Hillenmeyer had materially misrepresented the condition of the septic system on the Seller Disclosure of Property Condition form completed when marketing the home for sale. Clair sent a follow-up letter to Hillenmeyer a few days later reiterating Clair's intention to withdraw from the contract.

On December 3, 2004, Hillenmeyer filed suit in the Grant Circuit Court alleging breach of the purchase contract and seeking damages as a result thereof. Clair promptly filed an answer and counterclaim[5] and the discovery process began. Depositions were taken of Jeffrey Clair, Susan Clair, Ellen Heile, and Jeff Franxman.[6] Court-ordered mediation failed to resolve the issues between the parties. Both sides of the dispute eventually filed summary judgment motions and a joint hearing was held on same. The trial court granted summary judgment to Hillenmeyer and denied the motion for similar relief filed by Clair via written order dated January 9, 2006. Subsequently, a hearing to determine Hillenmeyer's damages was held on April 5, 2006, attended by Hillenmeyer and the attorneys for each side; Clair did not personally appear.[7] The trial court heard Hillenmeyer's testimony, received evidence, and fixed damages at $39,976.20.[8] This appeal followed.

 The standard of review relating to the appeal of a summary judgment is well-settled in this Commonwealth. Our determination must center upon whether the trial court erred in its conclusion that there were no genuine issues of material fact and the moving party was entitled to

4. One of the other handwritten additions to the purchase contract was a provision allowing Clair to begin construction of a new sunroom and detached garage off the rear of the home after closing, but before receiving actual physical possession of the property. The change in possession was to occur some 30 days after closing.

5. The counterclaim revolved around allegations of fraud, abuse of process and malicious prosecution, and sought unspecified damages, both compensatory and punitive.

6. It is noted that neither of the sellers gave sworn testimony during discovery.

7. Clair's attorney informed the Court that he had been unable to contact his clients for a period of several months, but noted that both he and Jeff Clair had serious medical issues which were being attended to in that same time period. Counsel did not present any evidence on behalf of Clair, nor did he participate in the examination of witnesses at this hearing.

8. During the course of the litigation, Hillenmeyer was able to find a new buyer for the home, albeit for the lower sales price of $205,000.00. The damage award included the $14,000.00 difference in sales price, attorneys fees, costs, additional repair expenses, and the earnest money deposit from the first sale.

judgment as a matter of law. *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. *See also Commonwealth v. Whitworth,* 74 S.W.3d 695 (Ky.2002). In the seminal case regarding this issue, *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991), the Supreme Court of Kentucky stated "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." Further, in order for summary judgment to be proper, the movant must show the adverse party cannot prevail under any circumstances. *Paintsville Hospital Co. v. Rose,* 683 S.W.2d 255 (Ky.1985). We are not required to give deference to the trial court as factual findings are not at issue. *Lewis v. B & R Corporation,* 56 S.W.3d 432 (Ky.App.2001); *Goldsmith v. Allied Building Components, Inc.,* 833 S.W.2d 378 (Ky.1992). *Steelvest, supra* at 480, also makes it abundantly clear that "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor [citation omitted]." Finally, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. *See also* Philipps, *Kentucky Practice,* CR 56.03, p. 418 (6th ed.2005).

Clair first contends the trial court was clearly erroneous in granting the summary judgment in favor of Hillenmeyer. A careful review of the record, resolving all issues in favor of Clair as opponent to the summary judgment motion, indicates the presence of several genuine issues of material fact which should have been allowed to be determined by the trier of fact. This being the case, in light of the contradictory evidence received by the trial court, we cannot conclude Hillenmeyer was entitled to a judgment as a matter of law. A cursory review of the historical facts presented to the trial court bears out our determination.

First, Hillenmeyer consistently claimed the septic system on the property was up to "code" which was all that Clair required. In Hillenmeyer's own words, however, "all parties were left guessing" as to what "code" was referred to in the contingency. The resolution of this question is clearly a material fact for the jury to decide in order to determine who, if anyone, breached the purchase contract, and if there was a valid defense therefor. Further, even if this question could be answered based upon the evidence presented to the trial court, there remained a genuine dispute between the parties as to whether the system met any particular code in light of the alleged failures within the system. Resolution of these questions should have been reserved for the finder of fact.

Next, Hillenmeyer argued the system itself worked as designed. Any perceived failures or defects were not from a faulty design or a result of damage within the system, but rather were a direct result of running more water through the system than it was designed to handle. Additionally, Hillenmeyer argued the presence of water from a septic system above ground is a normal occurrence and is not indicative of any system flaw. However, the

deposition testimony of Franxman reveals such is not a normal happening and would indicate to him the system had failed.[9] These contradictory positions reveal a genuine issue as to whether there was a failure within the system. If there was no failure, Hillenmeyer's position is superior. Conversely, if a failure did exist, Clair could reasonably be found to have a valid defense on the breach of contract issue. Again, this reveals an issue to be resolved by the finder of fact.

Further, in defense of the suit, Clair advanced the issue of fraud based upon an allegedly intentional concealment of defects in the system as well as the existence of prior problems with the system known only to Hillenmeyer. This fact was vehemently opposed by Hillenmeyer who consistently claimed there could be no concealment of defects when even a casual observer could see water coming to the surface near the rear of the property. Thus, according to Hillenmeyer, Clair was on notice of the possible existence of a problem with the septic system before the purchase contract was executed and could not now complain of concealment. Clair presented testimony and business records from Grant County Septic System [10] showing work had previously been done on the system which was not indicative of routine maintenance, and which service had not been reported on the disclosure of property condition report. From this evidence a jury might reasonably have found that Hillenmeyer had concealed defects in the system. Although it would not have been required to so find, Hillenmeyer has not refuted this possibility. Generalized denials that an issue exists are insufficient to eliminate a genuine issue of material fact.

Finally, the trial court relied on Clair's refusal to accept the proposed addition to the septic system and their failure to make a counter proposal in ruling Clair could not prevail at trial. Clair testified the proposed manual valve system was unacceptable, over-burdensome, and not what had been originally bargained. Hillenmeyer argued, and the trial court agreed, that Clair's satisfaction with any proposed repair was not required under the contract, only that Clair be allowed to be present when repairs were effectuated. However, the language of the purchase contract directly contravenes Hillenmeyer's position and undermines the trial court's ruling that Clair could not prevail at trial under any circumstances. The preprinted portion of the purchase contract specifically states that if inspection of the property revealed a defect which was timely reported to Hillenmeyer, then Hillenmeyer shall "either (a) repair the defects *in a manner acceptable to the Buyer* who reported the defects, or (b) provide other assurances *reasonably acceptable to Buyer* that the defects will be repaired with due diligence and in a manner acceptable to the inspectors or contractors who reported the same" [emphases added]. There is no question the defect was known to all parties. Its inclusion as a handwritten clause in the contract is further proof it was called to Hillenmeyer's attention. Contrary to the trial court's finding, the handwritten clause does not eliminate, but merely supplements, the preprinted clause regarding repairs.[11] Thus, a jury could

9. It is important to note that Franxman was a neutral third-party in this controversy, and his consultation was obtained upon agreement by all of the parties.

10. Although the record is unclear on this point, it appears Grant County Septic System is a private company which specializes in the installation, maintenance, and repair of septic systems.

11. The general rule of interpretation of contracts is that effect must be given to all terms of the contract, if possible. When inconsis-

reasonably have found that Clair's satisfaction with any proposed repairs was, in fact, required by the contract. The question would then become whether the proposed extension of the system was reasonable and whether Clair's rejection of the proposed fix was reasonable. These were questions of material fact for the jury to answer.

Although additional genuine issues of material fact are apparent from our review of the record before us, having cited the foregoing instances we need not provide an exhaustive list. A single issue of material fact, the resolution of which could reasonably change the outcome of the litigation, is sufficient to overcome a motion for summary judgment. *See* CR 56.03; *Steelvest*, 807 S.W.2d at 481; and *Puckett v. Elsner*, 303 S.W.2d 250 (Ky. 1957).

For the foregoing reasons, Hillenmeyer failed to show Clair could not prevail under any circumstances at trial. Therefore, we do not believe from the record before us that Hillenmeyer was entitled to judgment as a matter of law. Thus, we hold the circuit court erred in granting summary judgment. Having thus held, the remaining issues of the parties become moot for purposes of this appeal.

Accordingly, the judgment of the Grant Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

tencies appear on the face of the document, handwritten or typewritten additions or alterations intentionally added by the parties will prevail over preprinted terms, and handwriting prevails over typewriting. "However, it is only where the written or typed words and the printed words are so contradictory that an ambiguity arises that one must yield to the other." 17A C.J.S. Contracts § 325. Here, no ambiguity exists between the preprinted and handwritten portions of the contract. Therefore, all provisions must be given effect.