Wenda CONLEY, Michael Napier, and
Alice Vanhook, Appellants

v.

PULASKI COUNTY BOARD OF EDU-
CATION; Steve Butcher, individually,
and in his capacity as Superintendent
of the Pulaski County Board of Edu-
cation; Cindy Price, individually, and
in her official capacity as Member of
the Pulaski County Board of Edu-
cation; Phillip Wilson, individually,
and in his official capacity as Member
of the Pulaski County Board of Edu-
cation; Olivia Minton, individually,
and in her official capacity as Mem-
ber of the Pulaski County Board of
Education; Edwin Sellers, individual-
ly, and in his official capacity as
Member of the Pulaski County Board
of Education; and Jim Wilson, Indi-
vidually, and in his official capacity as
Member of the Pulaski County Board
of Education, Appellees

NO. 2014–ca–001349–MR

Court of Appeals of Kentucky.

RENDERED: MAY 27, 2016; 10:00 A.M.

Brief for Appellants: Cheryl U. Lewis,
Hyden, Kentucky, Daniel Yeast, Somerset,
Kentucky

Brief for Appellees Pulaski County
Board of Education; Steve Butcher; Cindy

Price; Phillip Wilson; and Jim Wilson: Larry G. Bryson, London, Kentucky

Brief for Appellees Olivia Minton; and Edwin Sellers: William A. Hoback, Mark S. Fenzel, Louisville, Kentucky

BEFORE: JONES, J. LAMBERT AND MAZE, JUDGES.

## OPINION

JONES, JUDGE:

The Appellants, Wenda Conley, Michael Napier, and Alice Vanhook, were each employed by the Pulaski County Board of Education. In December of 2012, they filed a joint complaint against the Pulaski County Board of Education ("Board"); the individual Board members; and Steve Butcher, the Board's superintendent, alleging political retaliation in violation of Kentucky Revised Statutes ("KRS") 161.164. The Pulaski Circuit Court entered summary judgment in favor of the Board and its members on the basis that Appellants failed to show that either the Board or its members were involved in the employment-related decisions at issue. The circuit court also granted summary judgment to Butcher, who was involved in the employment-related decisions affecting the Appellants, on the basis that Appellants failed to produce any evidence demonstrating that they engaged in any "political affiliation" prior to the adverse employment actions about which they complained. Having carefully reviewed the record and applicable legal authority, we AFFIRM.

## I. BACKGROUND

The events leading up to this appeal began in 2010 when the position of superintendent of the Pulaski County school system became vacant.[1] Dan Price, the principal of Pulaski Central Alternative High School ("Pulaski Central"), and Steve Butcher, Pulaski County's assistant superintendent, both applied for the position. In July of 2010, the Board appointed Butcher to the vacant position.

A year later, in July of 2011, Price came under investigation by the Office of Education Accountability ("OEA"). The OEA directed Superintendent Butcher and his staff to investigate numerous allegations against Price. The investigation substantiated allegations of grade and attendance tampering at Pulaski Central. As a result of the investigation, Butcher removed Price as principal of Pulaski Central and demoted him to a regular teaching position. Price appealed his removal and demotion to the Board. The Board scheduled a hearing for January 13, 2012. In preparation for the hearing, Price issued subpoenas to sixteen school district employees, including Appellants. Napier and Vanhook testified at the hearing. Conley appeared at the hearing, but was not called to testify. Ultimately, the Board upheld Price's removal and demotion.[2]

In May 2012, Superintendent Butcher made several employment decisions that affected Appellants, along with several other employees, many of whom were also subpoenaed by Price to testify at the hearing. Appellants maintain that these decisions (discussed in detail below) were

1. The appointment and replacement of public school superintendents is governed by KRS 160.350.

2. Price appealed to the circuit court, which also affirmed the Board. Price then appealed to our Court. In an unpublished decision, we affirmed the circuit court on the basis that substantial evidence existed to support demoting Price. *Price v. Bd. of Educ. of Pulaski Cty.*, No.2012–CA–002178–MR, 2014 WL 631686, at *3 (Ky.App. Feb. 14, 2014).

made in retaliation for their support of Price at his demotion hearing.

### Michael Napier

Napier is Price's brother-in-law. He was hired by the Board to serve as the assistant principal of Southern Middle School for the 2011–2012 school year. This was Napier's first year working in the Pulaski County school system. As such, he was issued a one-year probationary contract in accordance with KRS 161.740(1)(c). In May of 2012, Napier was notified that his contract would not be renewed. Napier alleges that his contract was not renewed because of his relationship with and testimony in support of Price.

Butcher denied that political retaliation had anything to do with the decision not to rehire Napier. Butcher testified that he decided not to rehire Napier at the request of Troy Dotson, the principal of Southern Middle School. Dotson's testimony supports Butcher's assertion. Dotson testified that he recommended to Assistant Superintendent Patrick Richardson that Napier not be reemployed. Dotson stated this was because several teachers within his school came to him and made complaints regarding Napier's lack of student discipline. Dotson stated that he "just didn't think Mike was a good fit for our school at that time." Dotson denied that he was pressured by anyone to recommend that Napier not be hired.

### Wenda Conley

Prior to May of 2012, Wenda Conley served as the bookkeeper, secretary and receptionist at Pulaski Central. The school system was rearranged such that Pulaski Central was to no longer exist as an independent, separate high school; the building was to be used by a combination of the Day Treatment Program and the Alternative Program. The Director of the Day Treatment Program already had a secretary/receptionist/bookkeeper. Butch-er testified that he did not see a need for two persons performing the same job and, therefore, decided to move Conley. She was transferred to Southern Elementary School where she was assigned to work in the cafeteria as a cook/baker.

When asked about Conley's transfer, Butcher explained:

> When, as I told you earlier we brought the day treatment to that program with the director she had her own personal assistant so we didn't have a need for two in that facility and so, you know, and I talked to my assistant (Superintendent), Patrick Richardson, I said you know in Wenda's situation let's find her a position that we are, and I was looking at money. A position that will pay her as close to what she can possibly get and let's also try and find her a position that's closer to her home. You know I didn't want to hurt her financially.

Butcher explained that he was not able to place Conley in another administrative-type position because none were open at the time. Butcher testified that he told Conley that she could apply for an administrative position if one came open in the future. Conley testified that she has not applied for any of the five or six administrative positions that have become available since her transfer.

### Alice Vanhook

Vanhook has been employed by the Pulaski County Schools as a teacher since 1990. In May of 2012, she was transferred from Pulaski Central to Southwestern High School. This transfer resulted in the loss of a $1000.00 annual stipend she previously received for conducting home visits, because such visits were not required at Southwestern High School as they had been at Pulaski Central.

Butcher denied that his decision to transfer Vanhook was motivated by any

retaliatory animus. He explained his reasons for transferring Vanhook as follows:

> We made a decision when we, we made a decision to have four core teachers over there at Pulaski Central. I wanted math, science, social studies and language arts. At the time I had two language arts over at Central ... what I wanted to do to run the program is to keep four teachers over there at that school because I thought that was adequate staffing for what we had over there. Ms. Vanhook and the other language arts teacher, they were both at each other's throats all the time for lack of a better word. Also they weren't cooperative with the director at any point in time, you know when Mr. Price left. And it just was not a good fit from that standpoint to leave her at that school. And so I made the decision to move her to Southwestern High School.

Following discovery, the circuit court granted summary judgment in favor of Butcher, the Board, and the individual board members. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. Summary judgment should be granted only if it appears impossible that the non-moving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Serv. Cn'tr, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Summary judgment "is proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.*

(citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)).

On appeal, we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's decision. *Goldsmith v. Allied Bld'g Components Inc.*, 833 S.W.2d 378 (Ky.1992). Our review is *de novo. Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky.2007).

## III. ANALYSIS

A specific statute, KRS 161.164(4), protects school employees from discrimination on the basis of political affiliation. It provides:

> No teacher or employee of any district board of education shall be appointed or promoted to, or demoted or dismissed from, any position or in any way favored or discriminated against with respect to employment because of his political or religious opinions or affiliations or ethnic origin or race or color or sex or age or disabling condition.

*Id.* The General Assembly enacted KRS 161.164(4) to prevent political retaliation against teachers and employees for supporting school board candidates. *See Calhoun v. Cassady*, 534 S.W.2d 806, 808 (Ky. 1976).

The burden of proof necessary to survive a motion for summary judgment on a political retaliation claim is not great. "As a matter of proof, there need be no more than an inference of arbitrariness[.]" *Harlan Cnty. Bd. Of Ed. v. Stagnolia*, 555 S.W.2d 828, 830 (Ky.App.1977). If it is

determined that the primary motivation behind the adverse action was to punish the plaintiff for political activities the action is void. *Calhoun,* 534 S.W.2d at 808. This is so even though the school board or superintendent may be able to identify some nondiscriminatory rationale to support its decision after the fact. *Id.*

■ The "political affiliation" alleged by Appellants in this case is their support of Price during his hearing before the Board. Appellants claim that the retaliation was political because Price and Butcher were political adversaries as they had both sought the position of superintendent in 2010.

Appellants do not allege any action they took to support Price in connection with his seeking to be appointed to the superintendant position. The only activity they allege is that they were subpoenaed by Price to testify at his demotion hearing. This hearing took place over a full year after Price's attempt to become superintendent.

While Price did argue at the hearing that the investigation was brought about because he challenged Butcher for the superintendent position, the Appellants' role in the hearing was not connected to those allegations. Conley, while subpoenaed, did not even testify at the hearing. While both Napier and Vanhook testified at the hearing, their testimony did not relate to the selection of a superintendant in 2010. Their testimony concerned Price's ability as a principal at Pulaski Central and the allegations against him.

The mere fact that Price previously sought the superintendent position does not morph all affiliation with him into a political affiliation. Appearing and testifying at a demotion hearing in response to a subpoena is not the expression of a political opinion nor does it create an actionable

political affiliation for the purpose of KRS 161.164(4).

While we are not bound by federal authority applying Kentucky law, we note that a federal district court recently reached a similar conclusion in *Napier v. Breathitt Cnty. Bd. of Educ.,* 31 F.Supp.3d 901, 903 (E.D.Ky.2014). In *Napier,* the FBI began investigating the superintendent. In conjunction with the investigation, Napier was interviewed and provided information to the FBI. Napier contended that as a result of his cooperation with the FBI the superintendent retaliated against him. The district court ultimately granted summary judgment in favor of the superintendant on the basis that Napier failed to identify any political activity on his part. The court explained:

> Napier has failed to allege what "political opinion" he expressed that allegedly resulted in the alleged adverse employment actions. In fact, he admitted that he was not pressured to support a particular candidate in any Board of Education election. Rather, Napier only alleges that the adverse action was taken against him due to his cooperation with the FBI, not because of any political views or opinions he held or expressed. Without more, Napier's claim based on KRS 161.164 fails.

*Id.* at 908–09.

Here, like *Napier,* Appellants have failed to allege what "political opinions" or "political activities" they took part in that allegedly resulted in their adverse employment actions. Rather, Appellants claim that the adverse action was taken against them due to their support of Price at a demotion hearing regarding grade tampering and attendance fraud allegations, not because of any political views or opinions. Price's status as a former contender for the superintendant position does not trans-

fer all his past and future associations with his colleagues into political ones.

Any number of things could constitute the expression of a political opinion or a political affiliation: making a political donation, writing an editorial, serving as a reference, displaying a yard sign, belonging to a politically affiliated group, speaking on behalf of or against an individual's candidacy, and so on. In this case, however, Appellants have not alleged that they engaged in any of these or similar activities. The only activity they allege in this case is appearing at a demotion hearing in response to a subpoena many months after Price sought the superintendant position. And, the record reveals that Appellants' testimony did not concern any of Price's political activities. There is simply no evidence in this case of an actionable political opinion or affiliation. As such, Appellants' claim under KRS 161.164 fails regardless of whether it is against Butcher, the Board, or the individual board members.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the Pulaski Circuit Court's entry of summary judgment in favor of the Appellees.

ALL CONCUR.