Tommy PUCKETT and Mario Russo, Appellants

v.

LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT, Appellees

NO. 2015–CA–000752–MR

Court of Appeals of Kentucky.

NOVEMBER 23, 2016; 10:00 A.M.

Rehearing Denied February 9, 2017

Discretionary Review Denied by Supreme Court August 16, 2017

BRIEF FOR APPELLANT: Ronald L. Green, James M. Inman, Lexington, Kentucky

BRIEF FOR APPELLEE: Keith Moorman, Lexington, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; CLAYTON AND J. LAMBERT, JUDGES.

## OPINION

KRAMER, CHIEF JUDGE:

Appellants Tommy Puckett and Mario Russo are members of the Lexington–Fayette Urban County Government Policemen's and Firefighter's Retirement Fund ("Fund"). On November 5, 2013, they filed an action pursuant to Kentucky Revised Statute (KRS) 67A.520, alleging the appellee, Lexington–Fayette Urban County Government (LFUCG), had failed to make its mandated 2011 contribution to the Fund. Their suit sought a court order compelling LFUCG, pursuant to the version of KRS 67A.520 in existence in 2011, to immediately make the full amount of that contribution along with interest at the rate which would have been earned had that sum been invested by the Fund.

LFUCG answered, asserting as an affirmative defense that it actually had "made payments to the Fund which more than offset the alleged deficiency in the 2011 contribution, and which were intended to cover that deficiency." Alternatively, it asserted that even *if* it had failed to make its 2011 contribution, it was a moot point be-

cause the appellants could not compel it to make that payment. As to why, LFUCG argued the current version of KRS 67A.520 entitled it to "subsume" whatever it had failed to contribute in 2011 into the "total unfunded actuarially accrued liability of the fund" (an aspect of the Fund described in KRS 67A.520(2) and discussed further below) and essentially pay whatever it owed over the course of the next 30 years.

LFUCG subsequently moved for summary judgment on the basis of its latter argument. The circuit court ultimately entered summary judgment in favor of LFUCG on that basis. This appeal followed. Upon review, we reverse and remand.

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 480 (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985)).

On appeal, we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky. App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Likewise, we review the circuit court's interpretations of law *de novo. Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007).

The appellants contend LFUCG was required to make its full 2011 contribution immediately, and that the circuit court erred by determining, to the contrary, that the current version of KRS 67A.520 permitted LFUCG to pay it later by subsuming whatever that contribution was, or whatever remained of it, into the "total unfunded actuarially accrued liability of the fund." We agree the circuit court erred. As an aside, much of the appellants' arguments regarding why the circuit court erred focus upon whether the current version of KRS 67A.520 was intended to have retroactive effect. But, the dispositive issue is whether any version of KRS 67A.520 has ever permitted LFUCG to miss a contribution to the fund and, as it successfully argued below, simply add that unpaid amount to the growing unfunded liability.

We begin with a discussion of what the Fund is, and how the unfunded liability of the Fund came into being. To paraphrase *Gurnee v. Lexington–Fayette Urban County Gov't*, 6 S.W.3d 852 (Ky. App. 1999), the General Assembly intended to create a statutory scheme that would enable urban-county governments to encourage qualified personnel to enter and remain in essential service positions with the police and fire departments. The General Assembly also intended that the pension funds created under this statutory scheme would be actuarially sound, that is, funded at a level sufficient to provide future benefits. *Id.* at 857. To that end, the prior versions of KRS 67A.560 demonstrated that the General Assembly contemplated

LFUCG would contribute an annual sum to the Fund which, when added to the contributions made by employees and other earnings of the Fund, would be sufficient to pay the current service cost—that is, the current value of the benefits being earned over the next year—and the *interest* on the unfunded past service liability. *Id.* at 857.[1]

However, when the Fund was established in 1974—and at least until 1999—LFUCG made only minimal contributions—contributions that were legally allowed, but less than what was recommended by the actuaries employed by the Fund's Board of Trustees in order to adequately insure the fund's soundness. *Id.* at 855. This, combined with the statute's requirement that LFUCG pay only *interest* rather than any amount of principal on the unfunded liability, resulted in an ever-widening gap between what the Fund had and what the Fund would need to provide future benefits. In 1978, this unfunded liability was about $28 million. In 1993, it was $44 million. *Id.* at 855, n.4. The LFUCG also represented in its attachments to its motion for summary judgment, below, that the total unfunded actuarial accrued liability of the Fund in 2011 had grown to $257,781,662; and an estimated $296,806,492 in 2012.

The first time the General Assembly passed legislation to address the principal

---

1. We have included two prior versions of KRS 67A.520 below, and have italicized the language directing payment of only the interest on the unfunded service liability. The version in effect at the time of *Gurnee* provided:

   The government shall make current contributions to the fund on an actuarially funded basis, toward the annuities and benefits herein provided. These contributions shall be equal to the sum of the following:

   (1) An annual amount resulting from the application of a rate percent of salaries of active members determined by the entry age normal cost funding method. Such rate percent shall be fixed by the board every three (3) years, within six (6) months after the actuarial study required by subsection (6) of KRS 67A.560 (actuarial survey of the fund), and shall be in effect for a period of at least three (3) years.

   (2) *An amount resulting from the application of a rate percent of the salaries of active members which will provide each year regular interest on the remaining liability for prior service.*

   (3) In any event, the total contribution of the government shall be at least seventeen percent (17%) of the salaries of the active members participating in the fund.

   (4) In addition to other remedies provided by law, any member of the fund or any annuitant may obtain in the Circuit Court of any county in which the government is located an injunction or mandamus requiring the government to comply herewith.

   The version in effect prior to the 2013 amendment of this statute (discussed further below) provided:

   The government shall make current contributions to the fund on an actuarially funded basis, toward the annuities and benefits herein provided. These contributions shall be equal to the sum of the following:

   (1) An annual amount resulting from the application of a rate percent of salaries of active members determined by the entry age normal cost funding method. Such rate percent shall be fixed by the board every two (2) years, within six (6) months after the actuarial study required by subsection (6) of KRS 67A.560 (actuarial survey of the fund), and shall be in effect for a period of at least two (2) years.

   (2) *An amount resulting from the application of a rate percent of the salaries of active members which will provide each year regular interest on the remaining liability for prior service.*

   (3) In any event, the total contribution of the government shall be at least seventeen percent (17%) of the salaries of the active members participating in the fund.

   (4) In addition to other remedies provided by law, any member of the fund or any annuitant may obtain in the Circuit Court of any county in which the government is located an injunction or mandamus requiring the government to comply herewith.

balance of the unfunded liability was when it amended KRS 67A.520 in 2013. As amended, the statute currently provides:

 The government shall make annual contributions to the fund toward the annuities and benefits provided by KRS 67A.360 to 67A.690 based upon the results of the annual actuarial valuation of the fund required by KRS 67A.560(6)(c). These contributions by the government shall be equal to the sum of the normal contribution amount and an additional amount to be known as the actuarially accrued liability contribution amount.

(1) For purposes of this section, the normal contribution amount shall be an annual amount that, when combined with all active member contributions to the fund, is sufficient to fund the benefits earned during the year.

(2) For purposes of this section, the actuarially accrued liability contribution amount shall be an annual amount that is sufficient to amortize the total unfunded actuarially accrued liability of the fund over a period of thirty (30) years, using the level-dollar amortization method, for a period beginning July 1, 2013, and ending June 30, 2043. The level-dollar amortization method shall be used to determine the government's contribution payable on or after July 1, 2013.

(3) The government contribution to the fund computed under this section shall:

(a) Be determined using the entry age normal cost method;

(b) Effective July 1, 2013, and for each fiscal year thereafter, not be less than twenty million dollars ($ 20,000,000) annually for the thirty (30) year period occurring on or after July 1, 2013, unless the pension fund has an actuarial funding level equal to or greater than one hundred percent (100%) as determined by the actuarial valuation of the fund, in which case, the contribution payable by the government shall be equal to the normal contribution amount specified by this section; and

(c) Be fixed by the board annually, in accordance with this section and based upon the results of the annual actuarial valuation required by KRS 67A.560(6)(c), and shall be in effect for a period of one (1) fiscal year. The board shall notify the government of the rates payable under this section following the board's acceptance of the actuarial valuation.

(4) In addition to other remedies provided by law, any member of the fund or any annuitant may obtain in the Circuit Court of any county in which the government is located an injunction or mandamus requiring the government to comply with this section.

In other words, the General Assembly directed LFUCG to continue making annual contributions to the Fund and further directed LFUCG to make separate annual payments aimed at gradually extinguishing the Fund's unfunded liability over the course of a 30–year amortization schedule.

With the above in mind, we now turn to why the circuit court erred when it held that the appellants could not compel LFUCG to pay any amount LFUCG may have failed to contribute to the Fund in 2011. As noted, the circuit court reasoned that if this amount or any part of it had gone unpaid, that amount had now become a part of what would be amortized over the next 30 years—the "the total unfunded actuarially accrued liability of the fund," as described in KRS 67A.520(2).

However, the General Assembly has never treated what it has required LFUCG to annually contribute to the Fund, pursuant to any incarnation of KRS 67A.520, as an amount that could potentially become a part of the Fund's growing unfunded liability in the event of nonpayment. To the contrary, LFUCG has always been required to make those contributions immediately and unconditionally. This is most evident from a plain reading of the versions of KRS 67A.520 in effect in 1999 and prior to the most recent amendment in 2013: both versions treated the unfunded liability as an amount LFUCG had *no obligation to pay* beyond interest-only payments; both versions also treated the annual contribution differently—as an amount LFUCG *was obligated to pay in full* each year, without exception. And, in the event LFUCG failed to make its annual contribution, every version of KRS 67A.520, including the current one, has always provided the same remedy: any member of the fund or any annuitant could institute legal action to compel LFUCG to make the contribution immediately and in full. *See* n.1, *infra* (discussing prior versions); *see also* KRS 67A.520(4).

In short, the unfunded liability does not double as a running tab for unpaid contributions. The amortization payments described in KRS 67A.520 address a shortfall in the Fund's assets that exists by reason of legislative design—namely, a funding scheme that permitted LFUCG to make minimal contributions and interest-only payments. The amortization payments are not intended to address a shortfall in the Fund's assets that exists by reason of LFUCG's noncompliance with its statutory duty to make annual contributions.

Accordingly, the appellants are correct that any missed contribution on the part of LFUCG did not become a part of the unfunded liability that must be paid in 30 years; rather, if the LFUCG did not make such a contribution, it must do so. We therefore REVERSE the Fayette Circuit Court and REMAND for further proceedings not inconsistent with this opinion.

ALL CONCUR.