RENDERED: NOVEMBER 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0007-MR

HEATHER PARLETTE                                              APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE GREGORY M. BARTLETT, JUDGE
ACTION NO. 19-CI-01452

C-9, INC. DBA BRIGHT FUTURE
CHILD ENRICHMENT CENTER                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND GOODWINE, JUDGES.

COMBS, JUDGE: This case involves a claim of wrongful discharge from employment. Heather Parlette (Appellant) appeals an order of the Kenton Circuit Court granting summary judgment to the Appellee, her former employer, C-9, Inc., d/b/a Bright Future Child Enrichment Center (Bright Future). The circuit court concluded that Parlette could not show that she was unlawfully discharged from

her employment and that, therefore, Bright Future was entitled to judgment as a matter of law.  After our review of the record, we affirm.

Bright Future is a licensed child daycare facility serving children from infancy to the age of 10 years.  During the period relevant to these proceedings, Kayla Bunch was the director of the facility.  Parlette's three children were enrolled at Bright Future when she began working there part-time in 2014.  Parlette's son, D.H., was born in September 2014.  When she returned to work following maternity leave, Parlette also registered D.H. for childcare at Bright Future.

In 2018, Parlette began working full-time for Bright Future.  She worked in the facility's kitchen and transported students to area schools in its passenger van.  The cost of D.H.'s attendance was paid through the Child Care Assistance Program (CCAP) administered by Kentucky's Cabinet for Health and Family Services.

D.H. suffers with sensory processing difficulties.  This set of challenges is not recognized as a neurological condition and does not constitute an independent medical diagnosis or mental disorder in medical manuals.  In order to help manage D.H.'s behavior, Bunch guided Parlette to First Steps, Kentucky's early intervention system serving children with developmental delays, and to

NorthKey Community Care. As a result of these efforts, therapists came to Bright Future to work with D.H. once a week.

On February 28, 2019, according to Parlette, a fellow employee approached her and stated that another employee had "body slam[med] my son to the ground as he was walking away from her." The employee who had allegedly assaulted D.H. was immediately terminated from her employment at Bright Future. Kayla Bunch, also Parlette's supervisor as well as director of the facility, discussed the components of a "preventative plan" that Bright Future established for D.H. and described the steps taken to prevent "the situation from ever escalating or coming again." Pursuant to the plan, an employee caring for D.H. who became overwhelmed by his behavior could call for relief for a brief period. Bright Future made a timely report of this incident to state licensing authorities.

Another incident at Bright Future involving D.H. occurred just a few months later in the early morning of May 20, 2019. Parlette explained it as follows:

> I was doing my rounds and getting counts and making
> sure everyone had what they had needed for the morning.
> And I heard the teacher in the four-year-old room
> scream, "I will drive you across this classroom," her door
> opened, and my son being put outside of it.

According to Parlette, the teacher "had her hands on [D.H.] and was scooting him with her body to get him to go out of the room." She described the teacher as

acting "in a very aggressive and angry manner." D.H. was crying. Since Kayla Bunch was not immediately available, Parlette took D.H. with her in the passenger van while she delivered other children to school.

Parlette finished her transport duties and returned to talk with Bunch. The teacher involved in the incident also attended the meeting along with another employee. Parlette remembers that the meeting "got very ugly and words were exchanged where things were said that sensory processes isn't real and that it's a made-up illness." Following the meeting, the teacher involved chose to leave her position with Bright Future. Bright Future reported the incident to state authorities before the close of business on May 20, 2019.

According to Parlette, Bunch explained to her that "we were short-staffed so we would either have to have me in the classroom or [D.H.] would not be able to attend because she wasn't able to get a second teacher in the classroom to make sure everyone was safe at all times." Parlette was aware of the daycare's disciplinary policy, which required the removal of children whose behavior could not be adequately managed by staff. However, she was also aware that she could not continue to receive benefits through CCAP if she were to provide care to her own child at the facility.

Later in the day, Parlette sent a text to Bunch explaining that "Daycare Assistance" needs written proof that "I was sent home." Parlette asked if

Bunch would prepare a statement indicating that "I am not able to come back to work until you have a second teacher for that classroom . . . ."

Parlette did not report to work the following morning, May 21, 2019. When asked whether she checked in with Bright Future, Parlette testified as follows:

> I talked with [Bunch] every single day, yes.
>
> . . . .
>
> I don't remember which day she said which thing, but we had spoke multiple times and she reiterated herself letting me know that I wasn't able to come back, she didn't have the staffing under control yet. She was still looking to hire.

Counsel asked specifically:

> When you were told by [Bunch] that they didn't have anybody to take care of [D.H.] at that point because of staffing shortages because he was going to require somebody by himself, I guess, did she tell you not to come to work or just not to bring [D.H.]?

Parlette answered:

> She didn't say either of those things. She wrote a letter that I requested for daycare assistance that they had needed of the incident because the incident also had to be reported through them as well.

Parlette did not report to work on May 22, 2019. Instead, she collected her belongings from her workspace and the written documentation she sought from Bunch. Bunch's written statement contained the following language:

> This letter is to inform you that due to staffing shortages [D.H.] is not allowed to return to the center until there are 2 teachers in his classroom. Due to this [Parlette] has taken time off work because he [*sic*] has no one else to keep [D.H.].

Parlette never returned to work at Bright Future. Nor did she ever ask to re-enroll D.H.

On July 2, 2019, Parlette filed a complaint with the Kentucky Commission on Human Rights. On August 16, 2019, she filed this civil action against Bright Future asserting claims for wrongful discharge. Parlette alleged that her employment was effectively terminated on May 20, 2019, because of: her son's disability; her refusal to violate regulations governing her receipt of CCAP funds; and/or her decision to report the abuse perpetrated against her son by Bright Future staff.

Bright Future answered the complaint and denied the allegations. When discovery was complete, Bright Future filed its motion for summary judgment. Bright Future argued that Parlette had not been discharged from employment; instead, she quit. It also contended that she had not been unlawfully discriminated against because she does not suffer with any disability and that she could not be characterized as a "whistleblower" for a number of reasons, including the undisputed fact that the facility complied immediately with reporting requirements.

In response, Parlette contended that genuine issues of material fact precluded summary judgment. She argued that a reasonable jury could infer from the evidence that Bright Future discharged Parlette on several alternate grounds: because she reported the abuse her son sustained at the facility; because she refused to violate regulations governing her receipt of state-sponsored childcare assistance benefits; or because it sought to injure D.H. further.

From the record, the court concluded that there were no genuine issues of material fact. It determined that Parlette left her employment voluntarily. The circuit court granted summary judgment to Bright Future on November 29, 2021. This appeal followed.

On appeal, Parlette argues that the trial court erred by concluding that Bright Future was entitled to judgment as a matter of law. We disagree.

Summary judgment is properly granted where:

> the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR[1] 56.03. Because summary judgment involves only questions of law and not the resolution of disputed material facts, we do not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992).

---

[1] Kentucky Rules of Civil Procedure.

Instead, we review the decision *de novo*. *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007).

The viability of Parlette's causes of action plainly depends upon proof that Bright Future discharged her from employment. In order to establish a cause of action for wrongful discharge, she must show either that the termination was contrary to public policy evinced by a constitutional or statutory provision -- or that the discharge resulted directly from the employee's refusal to violate the law during the course of his employment. *Greissman v. Rawlings and Associates, PLLC*, 571 S.W.3d 561 (Ky. App. 2019). To establish a *prima facie* case of unlawful discharge under Kentucky's Civil Rights Act, KRS[2] 344.010 *et seq.*, Parlette must establish that she suffers a disability within the meaning of the provisions of KRS 344.010(4) and that she was discharged despite the fact that she was qualified to perform the essential functions of her job. *See, e.g.*, *Board of Regents of Northern Kentucky University v. Weickgenannt*, 485 S.W.3d 299 (Ky. 2016).

This appeal can be resolved on the basis that Parlette failed to present evidence indicating that Bright Future terminated her employment. In her deposition, Bunch testified that she did not tell Parlette that she was not allowed to return to work. She never told her that she was fired or that she was expected to

---

[2] Kentucky Revised Statutes.

-8-

work in D.H.'s classroom. Bunch indicated that she anticipated that Parlette would return to her regular duties, but she never saw her after May 22, 2019, when Parlette collected her things from her workspace in the daycare's kitchen.

In his deposition, Bright Future's corporate representative explained that the facility would not have permitted Parlette to work in D.H.'s room or even to sit in to monitor his behavior. The corporate representative testified that Bunch was not authorized to offer either option and that the women appeared to be brainstorming for ideas to keep D.H. enrolled in daycare. He also indicated that the written statement that Bunch prepared upon Parlette's request was unauthorized and incorrect. He explained that D.H. was removed from the daycare because of his behavioral issues -- not because there was a staff shortage. He observed that D.H. had no medical or psychological conditions.

Finally, when asked specifically whether anyone from Bright Future told her that she was being discharged from her employment, Parlette testified, "I do not recall those words being used." Instead, she reported that Bright Future explained to her that the facility "did not have anyone in the room to be able to provide the care for [D.H.]."

Parlette was aware of the daycare's disciplinary policy requiring the dismissal of children whose behavior could not be adequately managed by staff. When she was asked whether she might have continued to work at Bright Future if

she had simply enrolled D.H. in another daycare facility, she said, "No, I don't believe so. . . . Because that was the second time my child has been injured there and it was a lot for me to be able to walk in the building."

There is no evidence to show that Parlette was ever discharged from her employment. Instead, all evidence indicates that Parlette voluntarily resigned her position. Consequently, Bright Future was entitled to judgment as a matter of law.

Therefore, we affirm the summary judgment of the Kenton Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

W. Kash Stilz, Jr.
Covington, Kentucky

BRIEF FOR APPELLEE:

Thomas L. Rouse
Ft. Mitchell, Kentucky